# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRACEY S. ARTZ, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 09-3766 |
| | : | |
| CONTINENTAL CASUALTY CO., | : | |
| Defendant | : | |

## M E M O R A N D U M

STENGEL, J.                                                             June  21, 2010

Tracey S. Artz filed this employment discrimination action against her former

employer based on sexual harassment, gender, and retaliation in violation of Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*,[1] and the Pennsylvania Human

Relations Act ("PHRA"), 43 Pa.C.S.A. § 951, *et seq.*[2]  The defendant has filed a motion

---

[1]  Under 42 U.S.C. § 2000e-2(a)(1):  it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

[2]  The PHRA provides:  It shall be an unlawful discriminatory practice, . . . (a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required.  43 Pa. Cons. Stat. Ann. § 955(a).

While Pennsylvania courts are not bound in their interpretations of Pennsylvania law by federal interpretations of parallel provisions in Title VII, the ADA, or the ADEA, its courts nevertheless generally interpret the PHRA in accord with its federal counterparts.  Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083-84 (3d Cir. 1995).  Accordingly, I shall specifically address only the Title VII claims which analysis applies equally to the PHRA claim.  Kelly v. Drexel University, 94 F.3d 102, 105 (3d Cir. 1996).

to dismiss the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, I will deny the motion in its entirety.

## I. BACKGROUND[3]

In May 2005, Miss Artz was hired by the defendant as a Claims Technician. <u>See</u> Am. Compl. ¶ 17. Justin Wanner was another employee of the defendant who worked on the same floor as the plaintiff. <u>Id.</u> ¶ 18. During the course of her employment, Miss Artz saw Mr. Wanner on a regular basis, and occasionally interacted with him. <u>Id.</u> ¶ 24.

In September 2007, Miss Artz was sexually assaulted outside of work by Mr. Wanner. <u>Id.</u> ¶ 18. Criminal charges for sexual assault were filed against him. <u>Id.</u> ¶ 19. Miss Artz informed her employer of the assault and the impact it had on her life, i.e., extreme concern, anxiety, and distress. <u>Id.</u> ¶ 20. The defendant put Mr. Wanner on a two month paid leave of absence as a consequence of the alleged sexual assault. <u>Id.</u> ¶ 21. The defendant promised Miss Artz that she would not have to see Mr. Wanner at work and that she would not have to interact with him during the course of her employment. <u>Id.</u> ¶ 22. Miss Artz returned to work in reliance on the defendant's promise. <u>Id.</u> ¶ 23.

In November 2007, two months after the sexual assault, Miss Artz saw Mr. Wanner in the building and immediately complained to the defendant. <u>Id.</u> ¶ 25. The

---

[3] The facts are gleaned from the amended complaint and the extrinsic documents upon which it is based. <u>See</u> <u>GSC Partners, CDO Fund v. Washington</u>, 368 F.3d 228, 236 (3d Cir. 2004). For the purposes of this motion, they are presented in the light most favorable to the plaintiff, as the non-moving party, and are accepted as true with all reasonable inferences drawn in her favor.

defendant advised Miss Artz that Mr. Wanner was still an employee and that its business decision had changed, but offered her no other explanation.  Id. ¶ 26.  The defendant gave Miss Artz three choices:  (1) she could resign; (2) she could move to a different floor; or (3) she could remain on the same floor as Mr. Wanner.  Id. ¶ 28.  As a consequence of Mr. Wanner returning to work, Miss Artz was allegedly forced to take a leave of absence. Id. ¶ 29.

## II.  STANDARD OF REVIEW

A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction.  Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000).  Facial attacks contest the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true.  Dismissal under a facial challenge is proper only when the claim appears to be immaterial and made solely for the purpose of obtaining jurisdiction, or is wholly insubstantial and frivolous.  Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1408-1409 (3d Cir. 1991).

In contrast, a trial court considering a factual attack, i.e., an attack based on the sufficiency of jurisdictional fact, accords a plaintiff's allegations no presumption of truth. Turicentro, S.A. v. Am. Airlines, Inc., 303 F.3d 293, 300 n.4 (3d Cir. 2002).  Where subject matter jurisdiction "in fact" is challenged, the trial court's very power to hear the case is at issue, and the court is therefore "free to weigh the evidence and satisfy itself as to the power to hear the case."  Mortensen v. First Federal Savings and Loan Assoc., 549

F.2d 884, 891 (3d Cir. 1977).  Here, the defendant brings a facial challenge to the court's jurisdiction to hear the merits of the plaintiff's claims.  <u>See</u> Document #13 at 5.

Likewise, a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure also asks the court to examine the legal sufficiency of the complaint.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).  The factual allegations of the complaint must be sufficient to make the claim for relief more than just speculative.  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.  <u>Id.</u>; <u>see also</u> <u>D.P. Enters. v. Bucks County Cmty. Coll.</u>, 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which she bases her claim.  <u>Conley</u>, 355 U.S. at 47.  Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  <u>Id.</u>  The "complaint must allege facts suggestive of [the proscribed] conduct."  <u>Twombly</u>, 550 U.S. at 564.  Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true.  <u>See</u> <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997); <u>Sterling v. Southeastern Pennsylvania Transp. Auth.</u>, 897 F. Supp. 893 (E.D. Pa. 1995).  The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a

reasonable expectation that discovery will reveal evidence of" those elements. <u>Phillips v.</u>

<u>County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008) (quoting <u>Twombly</u>, 550 U.S. at

556).

## III.   DISCUSSION

The amended complaint alleges that the defendant created a sexually hostile

environment for the plaintiff when it reneged on its promise, and failed to take adequate

remedial action on the plaintiff's complaint of sexual harassment. <u>See</u> Am. Compl. ¶ 31.

It further alleges that the defendant's conduct constituted unlawful discrimination against

her based on her gender. <u>Id.</u> ¶ 34. Finally, the complaint alleges that by her informing the

defendant that she wanted the defendant to take action to ensure Mr. Wanner did not have

contact with her at work, she engaged in protected activity under the relevant employment

discrimination statutes. <u>Id.</u> ¶ 37. As a result of engaging in that activity, the defendant

terminated or "constructively terminated" her employment and subjected her to other

adverse employment actions. <u>Id.</u> ¶¶ 38, 39.

### A.  Sexual Harassment/Hostile Work Environment

The defendant argues that this claim must be dismissed because Miss Artz cannot

make out a *prima facie* claim of sexual harassment. Specifically, it contends that Miss

Artz has failed to state a claim upon which relief may be granted because (1) the

defendant is not liable as a matter of law for a sexual assault by a co-worker outside of the

workplace and after work hours; (2) the defendant is not liable as a matter of law where

there is no nexus between the workplace, the plaintiff, and the alleged conduct; (3) the defendant is not liable as a matter of law where the employee who assaulted Miss Artz was acting outside the scope of his employment, outside of the workplace, and after work hours; and (4) the defendant took reasonable and successful remedial action to prevent harassment of Miss Artz after she advised the defendant of the sexual assault.

In order to prevail on this claim, Miss Artz will have to prove five elements: (1) that she suffered intentional discrimination because of her sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present. Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006). Accordingly, Miss Artz must show that her workplace was both objectively and subjectively offensive, one that a reasonable person would have found hostile or abusive, and one that she, in fact, found hostile or abusive. Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998) (citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22 (1993). When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated. Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986). A court must consider the totality of the circumstances when determining whether a hostile work environment exists, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening

or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Harris</u>, 510 U.S. at 23.

Here, the defendant's arguments seem to confuse the underlying basis of Miss Artz's claim. The defendant is correct that it was not responsible for the sexual assault of the plaintiff outside of the workplace. In fact, the plaintiff never alleged that it was. The plaintiff does allege, however, that the defendant was responsible for turning the workplace into a hostile environment for her when it invited Mr. Wanner to return. The amended complaint alleges that the defendant made a promise to the plaintiff that she would not have to come into contact with her alleged perpetrator at the workplace. The plaintiff relied on that promise and returned to work after the assault with the assurance that she would not come into contact with Mr. Wanner. After his paid leave of absence expired, Mr. Wanner returned to his job on the same floor as the plaintiff. When confronted by the plaintiff, the defendant informed her that its business decision had changed, and gave the plaintiff the choice to quit her job, move her job to a different floor, or remain on the same floor as her perpetrator. There is no allegation in the amended complaint that the defendant presented Mr. Wanner with similar choices.

At this stage in the proceedings, our pleading standard requires Miss Artz to state a claim for which relief might be granted, not to prove her case entirely. The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. <u>Phillips v.</u>

County of Allegheny, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556). Miss Artz's amended complaint alleges sufficient facts at this stage to describe a situation created by the defendant which would have put her in a most uncomfortable situation on a daily basis at the workplace with an ever-present fear of further threat and humiliation and potentially devastating effects on her performance. Harris, 510 U.S. at 23. Upon the completion of discovery, a more comprehensive analysis of this claim will be possible. Indeed, the claim will survive if Miss Artz presents sufficient evidence to give rise to an inference of discrimination by offering proof that her workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. Abramson v. William Paterson College of New Jersey, 260 F.3d 265, 279 (3d Cir. 2001) (citing Harris, 510 U.S. at 21). Accepting the allegations in the amended complaint as true and drawing all inferences in Miss Artz's favor, I find that Miss Artz has successfully stated a claim for which relief might be granted, and that she is entitled to offer evidence to support her claim. Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). I will deny the motion to dismiss as to Count I.

**B. Gender Discrimination**

The defendant next argues that this claim must be dismissed because Miss Artz cannot make out a *prima facie* claim of gender-based employment discrimination.

Among other bases, Title VII prohibits discrimination with respect to compensation, terms, conditions, or privileges of employment because of a claimant's sex. 42 U.S.C. § 2000e-2(a)(1). Where, as here, there is no direct evidence of gender discrimination, the court applies the McDonnell Douglas burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Under this framework, Miss Artz must first establish a *prima facie* case of gender discrimination by showing that: (1) she is a member of a protected class; (2) she is qualified for the position in question; (3) she suffered an adverse employment action; and (4) circumstances exist that give rise to an inference of unlawful discrimination. See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410-411 (3d Cir. 1999); Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 357 (3d Cir. 1999). Here, apparently conceding that Miss Artz is a member of a protected class who was qualified for her job, the defendant argues only that Miss Artz cannot satisfy the last two elements of a *prima facie* case.

## 1. **Adverse Employment Action**

An "adverse employment action" under Title VII is an action by an employer that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001) (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997)). The defendant contends that Miss Artz's allegation that she was subject to an adverse

employment action is inconsistent with her PHRC/EEOC Charge which alleged only that she was "given three choices." Because this allegation was not raised before the EEOC, the defendant insists, Miss Artz should be precluded from including the allegation that she was "forced to take a leave" in her amended complaint.

Generally, a plaintiff alleging employment discrimination cannot bring claims in federal court that were not first included in a Charge of Discrimination filed with the Equal Employment Opportunity Commission and exhausted at the administrative level. See Burgh v. Borough Counsel of Montrose, 251 F.3d 465, 469 (3d Cir. 2000). The Court of Appeals for the Third Circuit has recognized that this exhaustion requirement serves two purposes:

> First, it puts the employer on notice that a complaint has been lodged against [it] and gives [it] the opportunity to take remedial action. Second, it gives the EEOC notice of the alleged violation and an opportunity to fulfill its statutory responsibility of seeking to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion.

Bihler v. Singer Co., 710 F.2d 96, 99 (3d Cir. 1983).

According to well-settled law, the scope of a judicial complaint is not limited to the four corners of an administrative Charge. The relevant test in determining whether a plaintiff was required to exhaust her administrative remedies is whether the acts alleged in the subsequent complaint filed here are fairly within the scope of the administrative Charge or the investigation arising therefrom. Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir.

10

1996); Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984) (same); see also Hicks v. ABT Assoc., Inc., 572 F.2d 960 (3d Cir. 1972) (the addition of a sex discrimination claim permitted even though the EEOC only investigated race discrimination allegation because the sex discrimination claim would have grown out of a proper EEOC investigation of race claim).  The legal analysis turns on whether there is a close nexus between the facts supporting each claim or whether additional charges made in the judicial complaint may fairly be considered explanations of the original Charge or growing out of it.  See Galvis v. HGO Servs., 49 F. Supp. 2d 445, 449 (E.D. Pa. 1999) (citing Bailey v. Storlazzi, 729 A.2d 1206 (Pa. Super. 1999)).

Here, the defendant is correct that Miss Artz never used any variation of the terms "forced to take a leave" or "forced leave" in her PHRC/EEOC Charge of Discrimination. See Def.'s Exh. B.  It is important to note, however, that to establish a constructive discharge as a result of a hostile work environment, Miss Artz will have to prove that the defendant "knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1084 (3d Cir. 1996) (quoting Goss v. Exxon Office Sys. Co., 747 F.2d 885, 888 (3d Cir. 1984)).  Accordingly, while exact terms or phrases are not necessary, the following allegations found in Miss Artz's Charge tend to support a claim for constructive discharge:

> I was promised I would not have to see him or interact with
> him in the course of my employment. . . .  After the assault

11

> took place, not only was I a victim and a witness, I expressed my extreme concern, anxiety and distress at the possibility of even interacting with Mr. Wanner at work. Despite knowing of my distress and promising me I would never have to see Mr. Wanner, CNA broke their promise. I had been back at work approximately two months when I saw Mr. Wanner in the building. . . .
>
> It should be noted that after two months, in November 2007, Mr. Wanner was "invited" back to his employment with CNA. I have remained off work because of my emotional distress at the possibility of interacting with him or seeing him, possibly in an elevator, possibly going into the building or some other place.

Id. These allegations found in the administrative Charge are sufficient to support a finding that the claim of constructive discharge in the amended complaint has been administratively exhausted. Miss Artz has pleaded sufficient facts to establish, at this stage of the proceedings, the third element of the *prima facie* case for gender-based employment discrimination, i.e., an adverse employment action. Upon the completion of discovery, a more comprehensive analysis of this element will be possible.

## 2. **Inference of Unlawful Discrimination**

The defendant also argues that Miss Artz has failed to plead any facts which would permit the court to conclude that she could establish the fourth element of a *prima facie* case. It is important to note that the "central focus" of the *prima facie* case "is always whether the employer is treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'" Sarullo v. United States Postal Serv., 352 F.3d 789 (3d Cir. 2003) (quoting Pivirotto v. Innovative Sys., 191 F.3d 344, 352-353 (3d

12

Cir. 1999)).  The Third Circuit Court of Appeals has adopted a flexible view of this *prima facie* test, rejecting the requirement that a plaintiff compare herself to a similarly-situated individual from outside her protected class to raise an inference of unlawful discrimination.  Sarullo, 352 F.3d at 798 n.7.  Importantly, however, a plaintiff "must establish some causal nexus between her membership in a protected class" and the adverse employment decision of which the plaintiff complained.  Id.  Although an example of a circumstance that can raise an inference of discrimination may be found when an employee outside of the protected class is treated differently from the plaintiff.  Id.

Here, the amended complaint alleges that Miss Artz was sexually assaulted by a male co-worker outside of the workplace.  In response to Miss Artz's notification, the defendant took appropriate remedial action by placing the assailant on a leave of action, and promising Miss Artz that she would never have to come into contact with her assailant in the workplace.  After a two month paid leave of absence, the assailant returned to the workplace.  When Miss Artz complained, the defendant informed her that, in effect, it had reversed its earlier appropriate remedial action, that Mr. Wanner had returned to his employment, and that Miss Artz could stay, quit, or move to a different floor.  There is no assertion that Mr. Wanner, who had just returned from a two-month paid leave of absence, was given any such ultimatum.  These circumstances give rise to an inference, as required at the fourth element of the *prima facie* case, of unlawful

discrimination, i.e., that the defendant treated Miss Artz differently than a male co-worker based on her gender. Upon the completion of discovery, a more comprehensive analysis of this element will be possible. Accepting the allegations in the amended complaint as true and drawing all inferences in Miss Artz's favor, I find that Miss Artz has successfully stated a claim for which relief might be granted, and that she is entitled to offer evidence to support her claim. Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). I will deny the motion to dismiss as to Count II.

**C. Retaliation**

Title VII and the PHRA prohibit employers from retaliating against employees who oppose discriminatory employment practices or file their own charge of discrimination. See 42 U.S.C. § 2000e-3(a); 43 PA. CONS. STAT. § 955(d). A plaintiff bears the initial burden of establishing a *prima facie* case of retaliation by a preponderance of the evidence. Storey v. Burns Int'l Sec. Servs., 390 F.3d 760 (3d Cir. 2004) (citing Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)). To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she engaged in protected activity;[4] (2) the defendant took a materially adverse action against her; and (3)

---

[4] Protected activity includes filing Charges of Discrimination or making complaints about discriminatory employment practices. Abraham v. William Paterson College, 260 F.3d 265, 287-288 (3d Cir. 2001). Informal charges or complaints of discrimination are sufficient to constitute protected activities for establishing a *prima facie* case of retaliation. See Barber v. CSX Distrib. Servs., 68 F.3d 694, 701-702 (3d Cir. 1995).

there was a causal connection between the protected activity and the employer's adverse action. Weiler v. R&T Mech., Inc., 255 Fed. Appx. 665, 667-668 (3d Cir. 2007) (citing Moore v. City of Philadelphia, 461 F.3d 331, 341-42 (3d Cir. 2006)).

Here, the amended complaint alleges that "in complaining to the defendant about sexual harassment and assault, and in advising the defendant she wanted it to take action to ensure that her assailant did not have contact with her at work, the plaintiff engaged in activity protected under Title VII." Am. Compl. ¶ 37. The defendant does not challenge the first element of the *prima facie* case. Accordingly, I will consider it conceded for purposes of this motion.

The defendant, however, vigorously challenges the second element of the *prima facie* case. I note that the anti-retaliation provision of Title VII, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment. Moore, 461 F.3d at 341. A plaintiff claiming retaliation under Title VII must show only that a reasonable employee would have found the alleged retaliatory actions materially adverse in that they well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 63 (2006). I have already determined in Count II that Miss Artz sufficiently pleaded a claim for an adverse employment action against her by the defendant. That same result is warranted here. The amended complaint alleges that after Miss Artz complained, the defendant informed her that she was free to quit her job, move

her desk to another floor, or, in effect, buck up, grin, and bear it. A reasonable employee would have found that response materially adverse.

Regarding the third element of the *prima facie* case, a court may examine a broad array of evidence in determining whether a sufficient causal link exists between the protected activity and the materially adverse action. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 284 (3d Cir. 2000). A plaintiff can demonstrate temporal proximity, intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of causality. Id. at 279-281. Here, the amended complaint alleges sufficient facts to satisfy this element. It alleges that upon learning of the sexual assault outside of the workplace, the defendant placed the assailant on a paid leave of absence and promised the victim-plaintiff that she would never have to encounter her assailant again in the workplace. Miss Artz relied on that promise and returned to work. After a two month leave of absence, the assailant returned to work on the same floor as Miss Artz. When Miss Artz encountered him and complained of his presence to the defendant, she was met with a different attitude and informed that the defendant's business decision had changed, and that she was free to stay, to quit, or to move to a different floor. Given the temporal proximity of the events and the intervening antagonism on the part of the defendant, I find that there exists a causal connection between the protected activity and the materially adverse action. I will deny the motion to

dismiss as to Count III.

In conclusion, Miss Artz has provided a sufficient factual basis showing that she is entitled to relief. If more facts are necessary to resolve or clarify the disputed issues, the parties may avail themselves of the civil discovery mechanisms under the Federal Rules. Upon the completion of discovery, a more comprehensive analysis of Miss Artz's claims will be possible. Accepting the allegations in the amended complaint as true and drawing all inferences in Miss Artz's favor, I find that Miss Artz has successfully stated a claim for which relief might be granted. I will deny the motion to dismiss in its entirety.

An appropriate Order follows.